# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

ANDREA SCHMITH,

       Plaintiff,

v.                                 Case No:  2:16-cv-476-FtM-CM

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

---

## OPINION AND ORDER

Plaintiff Andrea C. Schmith seeks judicial review of the denial of her claim for a period of disability and disability insurance benefits ("DIB") by the Commissioner of the Social Security Administration ("Commissioner").   The Court has reviewed the record, the briefs and the applicable law.   For the reasons discussed herein, the decision of the Commissioner is **AFFIRMED**.

### I.    Issues on Appeal[1]

Plaintiff raises four issues[2] on appeal: (1) whether substantial evidence supports the Administrative Law Judge's ("ALJ") findings regarding the severity of Plaintiff's impairments; (2) whether the ALJ properly assessed Plaintiff's residual functional capacity ("RFC"); (3) whether the ALJ properly found that Plaintiff could

---

[1] Any issue not raised by Plaintiff on appeal is deemed to be waived.  *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

[2] For clarity and judicial efficiency, the Court will discuss Plaintiff's issues in a different order than presented in her brief.

perform her past relevant work; and (4) whether the ALJ was required to recuse himself from this case.

## II.    Procedural History and Summary of the ALJ's Decision

On November 18, 2008, Plaintiff filed her application for a period of disability and DIB.    Tr. 195-200.    Plaintiff alleged disability beginning on August 24, 2005[3] due to lupus, thyroid cancer and depression related to her medical condition and the fibroma.    Tr. 277.    The claim was denied initially and upon reconsideration.    Tr. 130-33, 137-39.    Plaintiff requested a hearing before an ALJ and initially received a hearing before ALJ Larry J. Butler on October 12, 2010.    Tr. 53-58, 111.    Plaintiff, who was represented by an attorney, appeared and testified at the initial hearing. Tr. 111.    On November 15, 2010, the ALJ issued a decision finding Plaintiff not disabled from August 24, 2005, the alleged onset date, through December 31, 2006, the date last insured.    Tr. 111-18.    Plaintiff requested the review of the ALJ's decision by the Appeals Council, which was granted on August 27, 2017.    Tr. 124-26. The Appeals Council vacated the ALJ's decision and remanded the case to the ALJ. *Id.*    Subsequently, the ALJ held a second hearing on November 22, 2013.[4]    Tr. 74-95.    Plaintiff, who was represented by counsel, appeared and testified at the hearing. *See* Tr. 74-95.

---

[3] Plaintiff alleged on her paperwork that her disability onset date was July 1, 2001. Tr. 277.    During the hearing before the ALJ, she orally requested to amend her onset date to August 24, 2005, which the ALJ granted.    Tr. 23, 111.

[4] The hearing was scheduled initially on April 29, 2013.    Tr. 42.    The ALJ continued this hearing to a later date because Plaintiff's counsel did not appear at the hearing on April 29, 2013.    Tr. 96-100.    As a result, the hearing relevant to the decision before the Court took place on November 22, 2013.    Tr. 74-95.

On November 7, 2014, the ALJ issued a decision finding Plaintiff not disabled from August 24, 2005, the alleged onset date, through December 31, 2006, the date last insured. Tr. 23-31. At step one, the ALJ found that Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2006 and had not engaged in substantial gainful activity from August 24, 2005 to December 31, 2006. Tr. 25. At step two, the ALJ found that through the date last insured, Plaintiff had the following severe impairments: status-post thyroid cancer, fibromyalgia and lupus. *Id.* At step three, the ALJ concluded that through the date last insured, Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 26-27.

The ALJ then determined that through the date last insured, Plaintiff had the RFC to perform the full range of medium work.[5] Tr. 27. Next, the ALJ found that through the date last insured, Plaintiff was able to perform her past relevant work as a bookkeeper. Tr. 30. Thus, the ALJ concluded that Plaintiff had not been under a disability from August 24, 2005, the alleged onset date, through December 31, 2006, the date last insured. *Id.*

---

[5] The regulations define medium work as follows:

Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work.

20 C.F.R. § 404.1567(c).

Following the ALJ's decision, Plaintiff filed a request for review by the Appeals Council, which was denied on April 26, 2016. Tr. 1-4. Accordingly, the ALJ's November 7, 2014 decision is the final decision of the Commissioner. Plaintiff filed an appeal in this Court on June 17, 2016. Doc. 1. Both parties have consented to the jurisdiction of the United States Magistrate Judge, and this matter is now ripe for review. Docs. 13, 14.

## III. Social Security Act Eligibility and Standard of Review

A claimant is entitled to disability benefits when she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505(a).[6] The Commissioner has established a five-step sequential analysis for evaluating a claim of disability. *See* 20 C.F.R. §416.920. The Eleventh Circuit has summarized the five steps as follows:

---

[6] The Court notes that after Plaintiff filed her application and the ALJ issued the decision, certain Social Security rulings and regulations have been amended, such as the regulations concerning the evaluation of medical opinions and evaluation of mental impairments. *See e.g.*, 20 C.F.R. §§ 404.1520a, 404.1520c and 404.1527 (effective March 27, 2017); SSR 16-3p, 2016 WL 1119029 (March 16, 2016). The Court will apply rules and regulations in effect at the time of the ALJ's decision, unless regulations specify otherwise. *Green v. Soc. Sec. Admin., Comm'r*, — F. App'x —, 2017 WL 3187048, at *4 (11th Cir. July 27, 2017) (in reviewing the ALJ's decision, refusing to apply SSR 16-3p retroactively because "administrative rules are not generally applied retroactively."); *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) ("[C]ongressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result."); 20 C.F.R. § 404.1527 (effective March 27, 2017) ("For claims filed . . . before March 27, 2017, the rules in this section apply."). *See also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (holding that when the Appeals Council denies review of the ALJ's decision, appellate courts review the ALJ's decision as the Commissioner's final decision).

(1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) if not, whether, in light of his age, education, and work experience, the claimant can perform other work that exists in "significant numbers in the national economy."

*Atha v. Comm'r Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (citing 20 C.F.R. §§ 416.920(a)(4), (c)-(g), 416.960(c)(2); *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011)). The claimant bears the burden of persuasion through step four; and, at step five, the burden shifts to the Commissioner. *Id.* at 933; *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla, *i.e.*, evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citations omitted); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (finding that "[s]ubstantial evidence is something more than a mere scintilla, but less than a preponderance") (internal citation omitted).

The Eleventh Circuit has restated that "[i]n determining whether substantial evidence supports a decision, we give great deference to the ALJ's fact findings."

*Hunter v. Soc. Sec. Admin., Comm'r,* 808 F.3d 818, 822 (11th Cir. 2015) (citing *Black Diamond Coal Min. Co. v. Dir., OWCP,* 95 F.3d 1079, 1082 (11th Cir. 1996)). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." *Foote*, 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings). It is the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Lacina v. Comm'r, Soc. Sec. Admin.*, 606 F. App'x 520, 525 (11th Cir. 2015) (citing *Grant v. Richardson,* 445 F.2d 656 (5th Cir.1971)). The Court reviews the Commissioner's conclusions of law under a *de novo* standard of review. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

IV. **Discussion**

a. *Whether substantial evidence supports the ALJ's findings regarding the severity of Plaintiff's impairments*

At step two, the ALJ found that through the date last insured, Plaintiff had severe impairments of status-post thyroid cancer, fibromyalgia and lupus. Tr. 25. The ALJ did not find, however, Plaintiff's asthma, depression and seizure disorder to

be severe impairments.    Tr. 25-26.

Plaintiff first argues that the ALJ erred by finding that her impairments of asthma and seizure disorder were not severe.[7]   Doc. 17 at 17-19.   She asserts that this error affected his subsequent analysis because the ALJ did not consider the limitations caused by her non-severe impairments in assessing her RFC and ability to perform her past relevant work.    *Id.*   The Commissioner responds that the ALJ's error at step two, if any, was harmless, and Plaintiff did not meet her burden to prove that her asthma and seizure disorder were severe impairments.    Doc. 18 at 7-10.

At the second step in the sequential evaluation process, the ALJ determines whether the claimant has a severe impairment.    20 C.F.R. § 404.1520(a)(4)(ii).    A severe impairment is an impairment or combination of impairments that significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c).   "An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986).    Plaintiff bears the burden of establishing that her impairments are severe and prevent the performance of her past relevant work.    *Bowen*, 482 U.S. 146 at 146 n.5 (1987).

---

[7] Plaintiff does not contest the ALJ's finding that her depression was not a severe impairment.   Doc. 17 at 17-18.   Instead, she argues that the ALJ erred by not accounting for the limitations caused by her depression in assessing her RFC.   *Id.*   The Court will address this argument in a separate section.

As in initial matter, the Court notes that Plaintiff misstates the ALJ's finding at step two, stating the ALJ found her asthma as a severe impairment, although the ALJ did not do so. Doc. 17 at 17; Tr. 25-26. Regardless, Plaintiff presents no medical evidence but her treatment records from 2006 in support of her argument. *Id.* As Plaintiff concedes, Usha Chandrahasa, M.D., who treated Plaintiff for asthma and allergies from January 19, 2006 to September 4, 2013, opined on March 23, 2006 and September 21, 2006 that Plaintiff's asthma was stable. Doc. 17 at 17 (noting that her asthma "was described as stable"); Tr. 546-47. Similarly, Plaintiff argues that the ALJ erred by finding her seizure disorder not severe, but she offers no medical evidence to support her argument. Doc. 17 at 18-19. Rather, she makes only a general argument that a seizure disorder affects her ability to work. *Id.* at 18. In contrast, the ALJ discussed in his opinion that although Plaintiff "sought treatment in January 2006 for a reported complex seizure disorder," she indicated that her condition "was under excellent control with medication but for occasional brief flushing sensations." Tr. 28. Furthermore, the ALJ noted that in January 2007, Plaintiff "reported her seizure disorder . . . remained well controlled." *Id.*

Accordingly, the Court finds that Plaintiff did not meet her burden to prove her asthma and seizure disorder as severe impairments because the evidence presented by her does not sufficiently demonstrate the impairments' effect on her ability to work. Doc. 17 at 17-19; *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) ("[A] diagnosis or a mere showing of a 'deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the

effect of the impairment on her ability to work."); *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) ("[T]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality"); *Robinson v. Astrue*, 365 F. App'x 993, 995 (11th Cir. 2010) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005)) ("The mere existence of an impairment does not reveal the extent to which it limits a claimant's ability to work, nor does it 'undermine the ALJ's determination' regarding her ability to work.").

Even assuming the ALJ erred by finding Plaintiff's asthma and seizure disorder not severe, the Court finds that any such error was harmless. This circuit holds that the ALJ's finding "of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement of step two." *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). This is because after proceeding beyond step two of the process, the ALJ must consider all of the claimant's impairments taken as a whole when determining whether her impairments qualify as a disability (step three) and whether she can return to her past work (step four) or, if not, whether she can perform other work available in the national economy (step five). *Id.*; *see* 20 C.F.R. § 404.1520. Accordingly, the Eleventh Circuit has held that if the ALJ finds any severe impairment at step two and proceeds beyond step two, "any error in failing to find that [the claimant] suffers from [] additional severe impairments . . . would be

rendered harmless." *Packer v. Comm'r, Soc. Sec. Admin.*, 542 F. App'x 890, 892 (11th Cir. 2013). Here, the ALJ found that through the date last insured, Plaintiff had three severe impairments and proceeded beyond step two. Tr. 25-30. As a result, the Court finds that even if the ALJ erred with his step two findings, the error was harmless. *See Packer*, 542 F. App'x at 892. Based on the findings above, the Court finds that the ALJ appropriately assessed the severity of Plaintiff's impairments.

### b. Whether the ALJ properly assessed Plaintiff's RFC

The ALJ determined that through the last date insured, Plaintiff had the RFC to perform the full range of medium work. Tr. 27. Plaintiff argues that there was not substantial evidence supporting the ALJ's RFC findings. Doc. 17 at 14-19. Plaintiff further asserts that the ALJ erred by according little weight to certain medical opinions in assessing Plaintiff's RFC and not including limitations from Plaintiff's asthma, seizure disorder and depression. *Id.* at 17-19, 21-24. The Commissioner responds that substantial evidence supports the ALJ's findings. Doc. 18 at 4-7. The Court already has addressed Plaintiff's arguments regarding her asthma and seizure disorder by finding that she neither showed her asthma or seizure disorder were severe impairments nor established the effect of these impairments on her ability to work. Doc. 17 at 17-19. Accordingly, the Court will address Plaintiff's remaining arguments related to the ALJ's assessment of her RFC. *Id.* at 14-16, 21-24.

The RFC is the most that a claimant can do despite her limitations. *See* 20

C.F.R. § 404.1545(a). At the hearing level, the ALJ in the fourth sequential step has the responsibility of assessing a claimant's RFC. *See* 20 C.F.R. § 404.1546(c). The ALJ is required to assess a claimant's RFC based on all of the relevant evidence in the record, including any medical history, daily activities, lay evidence and medical source statements. 20 C.F.R. § 404.1545(a). The claimant's age, education, work experience, and whether she can return to her past relevant work are considered in determining her RFC, *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1520(f)), and the RFC assessment is based upon all relevant evidence of a claimant's ability to do work despite her impairments. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004); *Lewis*, 125 F.3d at 1440 (citing 20 C.F.R. § 404.1545(a)).

Plaintiff first argues that her subjective complaints and her friends' testimony demonstrate her forgetfulness and loss of concentration. Doc. 17 at 15-16. Despite this evidence, Plaintiff asserts that the ALJ did not account for these limitations in his RFC assessment. *Id.* Contrary to Plaintiff's argument, the Court finds that the ALJ appropriately considered and analyzed the evidence at issue. The ALJ acknowledged Plaintiff's testimony that Plaintiff "does not think she can go back to her old job because of difficulties concentrating." Tr. 27. The ALJ also noted that "in 2009, friends of [Plaintiff] indicated that she babysits at times and volunteers with the church but has generally poor concentration and speech." Tr. 29. Nonetheless, the ALJ found that:

> [Plaintiff] indicated in a function report[] from late 2008 and 2009 that she had no difficulties completing her personal care activities. [Plaintiff]

was able to take care of a pet, prepare simple meals, and perform chores such as cleaning, cooking, and laundry. She used a computer and could shop for clothes and food online or in stores. She spends time watching television, reading, and engaging in small crafts when she is not too fatigued. She regularly spends time with others in person, on the phone, and attends church (B3E, B13E).

Tr. 28-29.   As a result, the ALJ determined that:

[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision. Additionally, [Plaintiff's] statements made at the most recent hearing appear to address her current limitations rather than those limitations dating back to her date last insured as her statements are not supported by substantial evidence as set forth below.

Tr. 29.

The ALJ's assessment of Plaintiff's conflicting testimony and daily activities was within the ALJ's discretion because "when there is credible evidence on both sides of an issue it is the Secretary, acting through the ALJ, and not the court, who is charged with the duty to weigh the evidence and to determine the case accordingly." *Powers v. Heckler*, 738 F.2d 1151, 1152 (11th Cir. 1984) (citing *Richardson*, 402 U.S. at 389-409).   As a result, the Court does not find persuasive Plaintiff's argument based on her subjective complaints and reports of daily activities.

Next, Plaintiff argues that the RFC assessments of Tatiana Huegenin, M.D., and Sash Seshadri, M.D., contradict the ALJ's RFC assessment.   Doc. 17 at 15-16. She asserts that the ALJ erred by according little weight to the opinions of Drs. Huegenin, Seshadri and Robert Steele, M.D.   *Id.* at 21-24.   The Court finds that the ALJ properly accorded little weight to their opinions and independently assessed Plaintiff's RFC.

In assessing Plaintiff's RFC, the ALJ discussed the treatment records of Dr. Huegenin, who treated Plaintiff for, among other things, her fibromyalgia, myalgia and lupus from August 28, 2006 to September 28, 2008. Tr. 626-60. The ALJ noted:

> [Plaintiff] sought treatment at the Sarasota Arthritis Center beginning in late 2006. In October, [Plaintiff] reported difficulties with dry mouth and insomnia. She reported having on isolated episode of vertigo. Examination showed normal pulmonary function, gait, memory, and orientation. No synovitis or tenderness with range of motion was observed. Tenderness was seen on or around [Plaintiff's] neck. [Plaintiff] received medication and instruction. Examination in January 2007 was largely unremarkable but for left shin pains and tenderness and right thumb pain and tenderness. [Plaintiff] received medications and was counselled on exercise. Subsequent examination in early 2007 was similarly unremarkable but for reported dry eyes and dry mouth. In May 2007, [Plaintiff] reported her myalgias were well controlled with medication and she felt well overall (B18F).

Tr. 28.

On September 30, 2009, Dr. Huegenin completed a medical source statement. Tr. 620-21. She opined that Plaintiff can lift and/or carry less than 10 pounds frequently and 10 to 20 pounds occasionally. Tr. 620. Dr. Huegenin noted that Plaintiff has chronic back pain and needs to avoid heavy lifting. *Id.* She further indicated that Plaintiff can stand and/or walk for less than 30 minutes in an 8-hour workday, noting that Plaintiff needs to change her position every 20 to 30 minutes in order to avoid back pain exacerbation. *Id.* Dr. Huegenin opined that Plaintiff can sit for less than 30 minutes in an 8-hour workday without taking any breaks and must alternate between sitting and standing at will to relieve pain and discomfort. *Id.*

Dr. Huegenin noted that Plaintiff can slowly climb ramps, stairs, or ladders for 1/3 of a workday and cannot at all balance, stoop, kneel, crouch or crawl. *Id.* She further opined that Plaintiff cannot stoop at all, although Plaintiff can reach in all directions, and handle, finger and feel with no limitations. *Id.* In addition, Dr. Huegenin noted that Plaintiff needs additional 20-minute breaks every 20 minutes for medical reasons.[8] *Id.* Nonetheless, Dr. Huegenin opined that Plaintiff need not elevate her legs above the heart or use a cane or other assistive devices. Tr. 621. Furthermore, Dr. Huegenin indicated that although Plaintiff has limitations due to chronic pain, she is not required to lie down during the day to relieve pain. *Id.* She opined that based on MRIs and x-rays concerning Plaintiff's osteoporosis, degenerative disease and scoliosis, Plaintiff is expected to change postures every 20 minutes in the morning and the afternoon. *Id.* She also noted that although Plaintiff's pain makes difficult to concentrate at times, Plaintiff is mentally alert and still is able to concentrate. *Id.* Dr. Huegenin wrote "okay" on the form instead of checking boxes to indicate the degree that Plaintiff's pain would interfere with her concentration. *Id.* Dr. Huegenin indicated that her opinion was within a reasonable degree of medical certainty, but did not confirm whether Plaintiff's condition existed since August 24, 2005 because she first saw Plaintiff in December 2005. *Id.*

---

[8] This finding indicates that even if Plaintiff does not take any normal breaks, Plaintiff could work only for 20 minutes per hour. Tr. 620. Accordingly, if Plaintiff is required to take 20-minute breaks in addition to her normally scheduled breaks as Dr. Huegenin opined, it is not clear whether Plaintiff could work at all. *Id.*

Dr. Huegenin also provided a fibromyalgia residual functional questionnaire on September 30, 2009. Tr. 622-25. As the title of the form indicates, the doctor assessed Plaintiff's various limitations related to Plaintiff's physical RFC, such as Plaintiff's abilities to deal with work stress and continually sit and stand at one time. *Id.* Dr. Huegenin also repeated some of her previous opinions contained in the medical source statement, such as Plaintiff's limitations on her ability to carry but that she did not need to use a cane or other assistive devices. Tr. 624.

The ALJ considered and accorded little weight to Dr. Huegenin's opinions because:

> [Dr. Huegenin] indicated in September 2009 that [Plaintiff] was limited to less than the full range of light work such that she was limited to standing or walking for no more than thirty minutes in an eight-hour workday, must alternate between siting and standing, could not sit for more than thirty minutes without a break, was unable to balance, stoop, kneel, crouch, or crawl, and would need breaks every twenty minutes generally among others (B18F). . . . [T]he opinion is not consistent with substantial contemporaneous treatment records which show during the period at or before [Plaintiff's] date last insured no synovitis or tenderness with motion with only minor isolated arthralgias. Shortly after, [Plaintiff] reported generally doing well and her myalgias were well controlled.

Tr. 29.

Dr. Seshadri treated Plaintiff for lupus twice in 2005 and for other medical issues from March 22, 2012 to September 16, 2013. Tr. 788-821. The ALJ discussed Dr. Seshadri's treatment notes from 2005 as follows:

> Progress notes from Dr. Sash Seshadri from June 2005 show [Plaintiff] to report generalized morning stiffness with fatigue thereafter, joint aches, and muscle pains, but with no paresthesias or swelling. [Plaintiff] was to continue rheumatologic management of her lupus. No clinical observations were made. In August 2005, [Plaintiff] reported continued

similar symptoms. Examination showed [Plaintiff] to report 18/18 tender points of fibromyalgia, a decreased range of motion, and pain/tenderness with motion and in joints. Lab work showed no relevant abnormalities. No swelling was seen.

Tr. 28.

Similar to Dr. Huegenin, Dr. Seshadri completed a RFC assessment form and fibromyalgia RFC questionnaire on March 18, 2013. Tr. 730-37. Dr. Seshadri opined that Plaintiff can lift and/or carry less than 10 pounds frequently and 10 to 20 pounds occasionally, but cannot carry or lift more weights. Tr. 731. The doctor noted that Plaintiff can stand, walk or sit for less than 30 minutes in an 8-hour workday and must alternate between sitting and standing at will to relieve pain and discomfort. *Id.* The doctor further indicated that Plaintiff cannot climb ramps, stairs or ladders, balance, stoop, kneel, crouch, crawl, reach all directions or finger. *Id.* She opined that Plaintiff can handle for 2/3 of a workday and feel unlimitedly. *Id.* In addition to normal breaks, Dr. Seshadri noted that Plaintiff must take 15-minute breaks every 30 minutes for medical reasons. *Id.*

Dr. Seshadri further opined that Plaintiff need not elevate her legs above the heart or use a cane or other assistive devices. Tr. 732. She noted that although Plaintiff has limitations due to chronic pain, she is not required to lie down during the day to relieve pain and has no limitations due to a mental impairment. *Id.* The doctor opined that Plaintiff's pain constantly affects Plaintiff's abilities to concentrate; follow, carry out, remember and understand simple instructions; use judgment; respond to supervision, coworkers and usual work situations; and deal with changes in a routine work setting. *Id.* Dr. Seshadri noted that her opinions

are within a reasonable degree of medical certainty, and Plaintiff's conditions existed since August 24, 2005. *Id.* In a fibromyalgia RFC questionnaire, Dr. Seshadri similarly assessed Plaintiff's various limitations relevant to her RFC, such as Plaintiff's abilities to tolerate work stress and sit, stand and walk. Tr. 734-37.

> The ALJ considered Dr. Seshadri's opinions and determined that:

> Dr. Sash Seshadri indicated in March 2013 that [Plaintiff] was limited to less than the full range of light work due to the effects of fibromyalgia and degenerative joint disease. [Plaintiff] was limited to sitting, standing, or walking for no more than thirty minutes in an eight-hour day and was unable to climb, balance, stoop, kneel, crouch, crawl, reach, or engage in fine manipulation. Furthermore, [Plaintiff's] concentration was limited constantly due to pain. Dr. Seshadri indicated that [Plaintiff] had these limitations dating back to August 2005 and that she would be unable to engage in even low stress jobs (B23F). This opinion is given little weight as it is inconsistent with contemporaneous medical treatment records as outlined above which show [Plaintiff] to appear generally well with few abnormalities one examination but for one isolated note form August 2005. The great weight of the medical record suggests that [Plaintiff] is not as limited as indicated by Dr. Seshadri during the relevant period prior to [Plaintiff's] date last insured.

Tr. 29-30.

Dr. Steele, a medical consultant, reviewed Plaintiff's medical evidence and provided a physical RFC assessment on July 20, 2009. Tr. 604-11. The ALJ accorded little weight to Dr. Steele's opinion because Dr. Steele "found [Plaintiff] limited to light work[, and] [Dr. Steele's] specialty appears to be ob/gyn which is not germane to [Plaintiff's] impairments. Furthermore, as noted above, substantial evidence suggests that [Plaintiff] was less limited (B16F)." Tr. 30.

The Court finds that the ALJ properly accorded little weight to the assessments by Drs. Huegenin, Seshadri and Steele, and the ALJ provided good cause

reasons for doing so. The ALJ found appropriate good cause to accord little weight to these assessments because he determined that they are inconsistent with Plaintiff's substantial medical evidence from the relevant period. Tr. 29-30; *see Winschel,* 631 F.3d at 1179 (quoting *Phillips,* 357 F.3d at 1241) (holding that good cause to discount the weight accorded to a treating physician's opinion exists when the "treating physician's opinion was not bolstered by the evidence" or "evidence supported a contrary finding").

Moreover, Drs. Huegenin, Seshadri and Steele provided their opinions by completing questionnaire forms. Tr. 604-11, 620-25, 730-37. Form questionnaires or so-called "checklist" opinions, such as those completed by the doctors, generally are disfavored. *Hammersley v. Astrue,* No. 5:08-cv-245-Oc-10GRJ, 2009 WL 3053707, *6 (M.D. Fla. Sept. 18, 2009) ("[C]ourts have found that check-off forms . . . have limited probative value because they are conclusory and provide little narrative or insight into the reasons behind the conclusions."); *Jones v. Comm'r of Soc. Sec.,* 478 F. App'x 610, 612 (11th Cir. 2012) (holding that the boxes checked by the doctors did not constitute their actual RFC assessment because checking boxes did not indicate the degree and extent of the claimant's limitations).

Furthermore, Drs. Huegenin, Seshadri and Steele assessed Plaintiff's physical RFC in the forms, which are not medical opinions, but issues reserved for the Commissioner. Tr. 604-11, 620-25, 730-37. RFC assessments and the application of vocational factors are exclusively reserved to the Commissioner. SSR 96-6p, 1996 WL 374180 (July 2, 1996); 20 C.F.R. § 404.1527(d)(2). The Eleventh Circuit has held

that "[a] claimant's [RFC] is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive." *Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 486 (11th Cir. 2012). The regulations also provide that the Commissioner "will not give any special significance to the source of an opinion on issues reserved to the Commissioner. . . ." 20 C.F.R. § 404.1527(d)(2). Accordingly, the Court finds that the ALJ considered the RFC assessments of Drs. Huegenin, Seshadri and Steele, but properly exercised his discretion by according little weight to their opinions and independently assessing Plaintiff's RFC based on Plaintiff's entire record. Tr. 28-30; *see* SSR 96-6p, 1996 WL 374180 (July 2, 1996); 20 C.F.R. § 404.1527(d)(2); *Beegle*, 482 F. App'x at 486.

Lastly, Plaintiff argues that in assessing her RFC, the ALJ did not account for limitations caused by her asthma, depression and seizure disorder. Doc. 17 at 17-19. The Court already has held that despite bearing the burden of proof, Plaintiff did not provide sufficient evidence to show what limitations were caused by her asthma and seizure disorder. *See Wind*, 133 F. App'x at 690; *McCruter*, 791 F.2d at 1547. In addition, Plaintiff asserts that although the ALJ found that she had mild limitations in the areas of activities of daily living, social functioning and concentration, persistence or pace, he did not include these limitations in his RFC assessment. Doc. 17 at 17-18.

Instead, the Court finds that the ALJ properly considered Plaintiff's mental impairments in assessing her RFC. At step two, the ALJ considered Plaintiff's

depression and found that it was a non-severe impairment. Tr. 26. The ALJ discussed:

> [Plaintiff's] medically determinable mental impairment of depression did not cause more than minimal limitation[s] in [Plaintiff's] ability to perform basic mental work activities and was therefore non-severe. The undersigned notes that [Plaintiff] did not seek or receive significant treatment for any mental health impairment prior to her date last insured. [Plaintiff] merely received anti-depressants from her primary care provider. Few, if any, clinical signs and symptoms were observed. This suggests that [Plaintiff's] mental condition was not significantly limiting. In January 2006, examination showed [Plaintiff] to be fully oriented and with normal cognition, memory, and apparent knowledge. Examination in July 2006 was similarly unremarkable. In January 2007, [Plaintiff] reported her depression was well controlled.

Tr. 25. In support, the ALJ considered four broad functional areas known as the "paragraph B" criteria.[9] Tr. 26. The ALJ determined that Plaintiff had mild limitations in activities of daily living, social functioning and concentration, persistence or pace, and has experienced no episodes of decompensation of an extended duration. *Id.* The ALJ then concluded that his RFC assessment "reflects the degree of limitation [he] has found in the 'paragraph B' mental function analysis." *Id.*

Furthermore, the regulations define medium work as work involving "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds," and are silent on mental limitations. 20 C.F.R. § 404.1567(c). Despite this definition and the ALJ's finding that her depression imposes no more than "minimal limitations" on her ability to perform work, Plaintiff does not offer any

---

[9] 20 C.F.R., Part 404, Subpart P. Appendix 1.

evidence that her depression precludes her from performing medium work or causes additional limitations. Doc. 17 at 17-18. *See Wind*, 133 F. App'x at 690; *McCruter*, 791 F.2d at 1547. As a result, the Court finds that the ALJ properly considered Plaintiff's depression in assessing her RFC. Tr. 25-30. Based on the findings above, the Court holds that substantial evidence supports the ALJ's RFC finding.

### c. Whether the ALJ properly found that Plaintiff could perform her past relevant work

On August 27, 2012, the Appeals Council vacated the ALJ's November 15, 2010 decision and remanded the case to the ALJ with various directives. Tr. 124-27. One of the Appeals Council's directives to the ALJ was that "[i]f warranted by the expanded record, [the ALJ should] obtain evidence from a vocational expert ("VE") to clarify the effect of the assessed limitations on [Plaintiff's] occupational base (Social Security Rulings 83-12 and 83-14)." Tr. 126. Without obtaining the testimony of a VE, the ALJ determined in his second decision that Plaintiff could perform her past relevant work as a bookkeeper. Tr. 30. Plaintiff argues that the ALJ erred by not consulting a VE, and her actual limitations do not support his findings. Doc. 17 at 11-14. The Commissioner responds that the ALJ properly assessed Plaintiff's RFC and was not required to consult a VE. Doc. 18 at 11-12.

Step four of the sequential evaluation process requires the ALJ to determine whether the claimant's RFC allows her to perform any of her past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). The claimant bears the burden of showing she unable to perform her past relevant work. *Barnes*, 932 F.2d at 1359; *Battle v. Astrue*, 243 F. App'x 514, 522 (11th Cir. 2007) (citing *Lucas v. Sullivan*, 918 F.2d 1567, 1571 (11th

Cir. 1990)). The ALJ assesses the claimant's RFC to determine whether the claimant can perform past relevant work despite her impairments. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f). To support a conclusion that the claimant is able to return to her past relevant work, the ALJ must consider all the duties of that work and evaluate the claimant's ability to perform them in spite of her impairments. *See Lucas*, 918 F.2d at 1574. An ALJ may consider a VE's opinion when making this determination. 20 C.F.R. § 404.1560(b)(2).

Here, Plaintiff repeats her previous argument that her forgetfulness and loss of concentration prevent her from performing her past relevant work. Doc. 17 at 13-14. The Court already has considered and rejected this argument and found that the ALJ properly considered Plaintiff's mental limitations and subjective complaints in assessing Plaintiff's RFC. Plaintiff does not offer any new evidence to show that she could not perform her past relevant work. Doc. 17 at 12-14.

Next, Plaintiff asserts that the ALJ erred by not consulting a VE, despite the Appeals Council's directive to obtain a VE's testimony, if warranted. Doc. 17 at 11-12. The Court first finds that in determining whether Plaintiff could perform her past relevant work, the ALJ was not required to obtain a VE's testimony. *See Lucas*, 918 F.2d at 1573 n.2; *Hernandez v. Comm'r of Soc. Sec.*, 433 F. App'x 821, 823 (11th Cir. 2011) ("Generally, vocational expert testimony is not necessary to determine whether a claimant can perform his past relevant work."); *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987) ("[B]ecause the ALJ concluded that she is capable of

performing her past relevant work, testimony from a vocational expert was not necessary.").

Lastly, Plaintiff argues that substantial evidence does not support the ALJ's finding that through the date last insured, Plaintiff was able to perform her past relevant work as a bookkeeper. Doc. 17 at 12-14. On the contrary, the Court finds that substantial evidence supports this finding, rendering a VE's testimony unwarranted. Tr. 30. As noted, the ALJ properly assessed that Plaintiff could perform the full range of medium work. Tr. 27. After his review of the record and Plaintiff's RFC and testimony, the ALJ then found that Plaintiff's past relevant work is a bookkeeper. Tr. 30. The ALJ noted that according to the Dictionary of Occupational Titles ("DOT"), Plaintiff's past relevant work as a bookkeeper is performed at the sedentary exertional level and has a specific vocational preparation ("SVP") of 6. *Id.*

Based on Plaintiff's RFC and this information from the DOT, the ALJ properly determined that through the date last insured, Plaintiff was able to perform her past relevant work as specifically and generally performed. *Id.*; *see* 20 C.F.R. §§ 404.1520(f), 416.920(f); SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000) (noting that "[i]n making disability determinations, [the Commissioner] rel[ies] primarily on the DOT . . . for information about the requirements of work in the national economy. [The Commissioner] use[s] these publications at steps 4 and 5 of the sequential evaluation process."); *Lucas,* 918 F.2d at 1574. Plaintiff does not challenge the finding that her past relevant work is a bookkeeper, or argue that her RFC, as

assessed by the ALJ, prevents her from performing this work, thus these issues are waived. Doc. 17 at 11-14; *Access Now*, 385 F.3d at 1330. As a result, the Court finds that substantial evidence supports the ALJ's determination that, through the date last insured, Plaintiff was able to perform her past relevant work as a bookkeeper; and a VE's testimony was not warranted in this case. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f); SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000); *Schnorr*, 816 F.2d at 582.

### d. Whether the ALJ was required to recuse himself from this case

Plaintiff argues that she requested ALJ Butler to recuse himself from this case because Plaintiff's counsel had an ongoing case against the ALJ. Doc. 17 at 19. Plaintiff asserts that the ALJ erred by not addressing this request or recusing himself from this case. *Id.* at 19-21. The Commissioner responds that Plaintiff does not show any evidence of the ALJ's bias, and the ALJ fairly and properly adjudicated Plaintiff's claim. Doc. 18 at 12-14.

The Social Security Act requires that a claimant's hearing is both full and fair. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam). The ALJ, of course, plays a "crucial role in the disability review process" and has a duty to "develop a full and fair record" and to "carefully weigh the evidence, giving individualized consideration to each claim." *Id.* at 1401. Accordingly, the ALJ must "not conduct a hearing if he or she is prejudiced or partial with respect to any party or has any interest in the matter pending for decision." *Id.* at 1400 (quoting 20 C.F.R. § 404.040). A claimant who fears that a particular ALJ will not provide a

fair hearing must notify the ALJ at the "earliest opportunity." 20 C.F.R. § 404.940. If the ALJ declines to withdraw, the claimant may seek reconsideration by raising the issue before the Appeals Council. *Id.* Here, although Plaintiff requested the ALJ to recuse from this case, the ALJ subsequently issued a decision adjudicating Plaintiff's claim, implicitly denying Plaintiff's request to recuse. Tr. 23-31, 377. Plaintiff did not raise this issue to the Appeals Council. Tr. 1-4.

The Court finds that the ALJ was not required to withdraw absent a specific showing by Plaintiff of bias or a conflict of interest in *this case*. A court begins with the presumption that the ALJ is unbiased, which "can be rebutted by a showing of conflict of interest or some other *specific reason for disqualification*." *Schweiker v. McClure*, 456 U.S. 188, 195-96 (1982) (emphasis added); *see also Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x 869, 875 (11th Cir. 2011) (affirming determination of no bias in part because the claimant failed to establish specific instances of bias in her case). Generalized assumptions of possible conflict or interest are insufficient. *Schweiker*, 456 U.S. at 196.

The Court's review of the ALJ's decision and the parties' arguments does not reveal any evidence of the ALJ's bias or the influence of the separate pending litigation involving Plaintiff's counsel on this case.[10] *See* 20 C.F.R. §§ 404.940,

---

[10] The cases cited by Plaintiff are inapposite, as in those cases the Court reversed ALJ Butler's decisions because substantial evidence did not support his decisions, not because of his actual bias against the plaintiffs. Doc. 17 at 20-21 (citing, among other cases, *King v. Comm'r of Soc. Sec.*, No. 2:14-cv-341-FtM-CM, 2015 WL 5234318, at *9 (M.D. Fla. Sept. 8, 2015); *Hill v. Comm'r of Soc. Sec.*, No. 2:14-cv-708-FtM-CM, 2016 WL 1253579, at *10 (M.D. Fla. Mar. 31, 2016)). Only after finding remand appropriate on other grounds, the undersigned directed the Commissioner to re-assign these cases for rehearing before a different ALJ in order to avoid any appearance or risk of actual bias or prejudgment. *Hill*,

416.1440; Docs. 17 at 19-21, 18 at 12-14. Indeed, Plaintiff has not cited to the record where such bias or prejudice *against this Plaintiff* is evident, and the Court already has found that the ALJ applied the proper legal standards, and his decision is supported by substantial evidence. Doc. 17 at 19-21. Accordingly, it was not error for the ALJ to fail to recuse himself from this case.

V.    Conclusion

Upon review of the record, the Court concludes that the ALJ applied the proper legal standards, and his determination that Plaintiff was not disabled from August 24, 2005 to December 31, 2006 is supported by substantial evidence.

ACCORDINGLY, it is hereby

**ORDERED:**

1.    The decision of the Commissioner is **AFFIRMED**.

2.    The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) in favor of the Commissioner, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on this 26th day of September, 2017.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record

---

2016 WL 1253579, at *10; *McCann v. Comm'r of Soc. Sec.*, No. 2:14-cv-265-FtM-CM, 2016 WL 1253576, at *11 (M.D. Fla. Mar. 31, 2016); *Segui v. Comm'r of Soc. Sec.*, No. 2:15-cv-399-FtM-CM, 2016 WL 5443673, at *8 (M.D. Fla. Sept. 29, 2016).